Pearson, J.
 

 The bill is filed by the executors of Elizabeth McLeod, against tire executors of John McLeod, for a settlement of his estate, under the direction of a Court of Equity.
 

 John McLeod died in December, 1849, leaving him surviving his widow, Elizabeth McLeod, and no child, nor the descendants of any — having made and published a last will, which was admitted to probate in February, 1850, at which time the widow entered her dissent. The testator had a large personal estate. He bequeathed to his widow certain negroes and other personal estate ; he made specific bequests of certain other negroes to different persons; and he left other negroes and property not specifically disposed of, which he directed to be sold, and the proceeds applied to the payment of debts and of sundry pecuniary legacies. The executors have hired out the negroes, and thereby realized a considerable amount. The proceeds of the hires of the negroes, bequeathed to the widow, are less in proportion than those of the other negroes ; and one of those bequeathed to her has died.
 

 Three questions are made : — Does the loss of the value of the negro that has died, fall upon the widow? 2. Is she to lose by the fact, that the negroes bequeathed to her, hired for less in pro--' portion — some of them being chargeable? 3. Is the settlement to be made upon the basis of the value of the negroes at the death of the testator, or at the date of the settlement ? These questions depend upon the same principle, and a decision of the first will dispose of the others.
 

 The law gives to a widow the right to dissent from her husband’s will, and upon her doing so, she becomes entitled to the same share of his personal estate that she would have been enti-
 
 *99
 
 tied to under the Statute of distributions, in case of bis intestacy ; that is, to one third part, if there be no child, or not more than two, and a child’s part, if there be more than two. Rev. Stat. oh. 121, sec. 12. The 13th section provides, that in allotting this share,
 
 “
 
 it shall be the duty of the Court to allot the same with as little derangement of the provisions of her husband’s will as is practicable.”
 

 The question is, how far this clause controls and restrains the rights of the widow? She claims, not as a creature of her husband’s bounty, but as one having a right secured to her by law. She has an election to take under the will, or to refuse the provision intended for her, and claim the share that she would have been entitled to under the Statute of distributions
 
 ;
 
 and it seems. to us that the most natural and proper construction, by which to make the different sections of the Statute stand together, is, that in case of dissent, the amount of the widow’s share is to be ascertained precisely as if the husband had died intestate : that is, in this case, upon the settlement, ascertain tire value and amount of the whole personal estate, after the payment of debts, and one third of that is the amount of the widow’s share. But in allotting,
 
 vizpaying over to
 
 her, this share, the above clause comes into operation ; and it is the duty of the Court to have her share paid out of such parte of the estate as are not specifically disposed of, if sufficient for that purpose — (in this, will of course be included the property intended to be given to her, but which is not disposed of by the will, in consequence of her dissent, for in respect to her the husband died intestate) ; and “ thus derange as little as practicable the provisions of the will,” by not touching specific legacies, if her share can be made up without doing so.
 

 But it is said, the legacy to the widow is a
 
 provision of the uñll,
 
 which ought to be deranged as little as practicable. It is manifest that the protection given by this clause extends only to such legacies as continue in force under the will, and does not include a legacy intended to be given to the widow, but which she has refused to take under the will, by a right expressly conferred on her in the preceding section. To justify this construction, it >vill be necessary to add — so as to derange as little as practicable the provisions of the will,
 
 including that intended for
 
 
 *100
 

 the widow,
 
 but which
 
 she has repudiated, nullified and stricken out of the will, as she had a right to do!
 

 The act of 1791 is prayed in aid of the construction
 
 contended
 
 for. By it, in case the widow dissented, a jury was to inquire whether the provision made for the widow was equal in value to her distributive share. If so, a she was to be therewith content if not, the deficiency was to be made up to her out of the
 
 residuum,
 
 or part of the estate not specifically disposed of. If that fund was insufficient, she had a
 
 scire facias
 
 against the legatees.
 

 The provisions of this Act are omitted in the Statute of 1836, and in lieu thereof, the clause above recited is inserted ; and it seems to a majority of the Court, that the construction contended for, so far from being aided, is directly excluded and put out of the question by the fact, that the Act of 1791 is omitted in the Revised Statutes.
 

 The Act of 1784 gave the widow a right to dissent, and entitled her to a distributive share, without any restraint. The Act of 1791 restrained the right, by compelling her to keep what was given to her, and providing a way to ascertain the deficiency, and how it should be made up. This was found to be very inconvenient, and gave rise to much litigation. Juries were disposed to favor widows, and in many cases it was impossible for a jury or a Court to fix on a rule or principle by which to be governed. For instance, negroes, including breeding women, are given to the wife during her widowhood, with a limitation over. If they had been given to her for life, there-is no rule or principle by which to ascertain the value of her estate ; and when the contingency of marriage is thrown in, the question is
 
 “
 
 at sea.” But the legatee having the limitation over has a vested right, and the matter could not be made certain, by giving the widow the entire estate.
 

 These considerations induced the Legislature of 1836, in revising the Statutes, to omit the'Act of 1791, and to adopt a middle course which is said to be the safest, and while retaining the general provisions of the Act of 1784, the Act of 1791 is omitted, and the clause above recited is inserted ; and according to the construction which this Court puts upon the whole Statute, the amount of the widow’s share is to be ascertained, as in case of intestacy, according to the Act of 1784 : but it is to be paid over to her in a
 
 *101
 
 way so as to derange the rights of specific legatees under the will as little as practicable.
 

 The construction adopted by this Court conforms to the words and meaning of the Act of 1836, and avoids the inconvenience and litigation that would necessarily resultfrom the other construction contended for. In the case above put, of a legacy to the wife during her widowhood, of slaves, the Act of 1836 points out no mode by which the value of such estate is to be ascertained, or how the deficiency is to be made up. In fact the value of such an estate cannot be ascertained in any mode ; and so the construction by which she is compelled to take the negroes, notwithstanding her express refusal to do so, cannot be reduced to practice. It will not do to say, let the entire estate be allotted to her — a value can be put on it; for that would wholly derange the specific legacy limited over. So, if the legacy intended to be given to the widow should, after her dissent, turn out to be of more value than her distributive share, the construction contended for would give room to suppose, that she was entitled to take it in spite of her election and express refusal on record. So, if one or all of the negroes, intended to be given to the widow, should, before the estate could be settled consistently with the rights of creditors, die or become diseased, and she, notwithstanding her dissent, was obliged to take them dead or alive, the payment of the share, to which by law she was entitled, could be made by the value of a negro
 
 who was then dead,
 
 although she never was the owner of this negro, and had, by her dissent, expressly refused to become the owner !
 

 This construction of the Statute of 1836 decides the questions made. The widow is not to be charged, on settlement, with the value of a negro now dead, given to her by a will to which she entered her dissent. She is not to lose by the fact that the negroes were hired out, and that those which she had refused to accept produced a less sum in proportion than the others, by way of hire ; and the amount of the estate, after paying debts, is to be ascertained, as of the time of settlement.
 

 The ground upon which there was a turpentine distillery, was held upon a lease for years ; and the idea that this was not a part of the personal estate, was properly abandoned.
 

 Per Curiam. Decree accordingly.